In re GRAND JURY
PROCEEDINGS 88–9 (MIA).

Appeal of Jerald NEWTON, John Doe.

No. 90–5232
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 6, 1990.

Scott Furstman, Santa Monica, Cal., for Jerald Newton.

Ira A. Loewy, Bierman, Shohat & Loewy, P.A., Miami, Fla., for John Doe.

Mark D. Seltzer, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla.

Before TJOFLAT, Chief Judge, JOHNSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this recalcitrant witness case, we affirm, in part, the district court's finding of contempt of court against a lawyer who refused to testify, as ordered, before a grand jury seeking information regarding the identity of the lawyer's client and the receipt of fees.[1]

---

1. The government requested information along the following lines:

1. Who gave the $30,200 cashier's check to Mr. Newton and with what services was this payment in connection?

2. What is Newton's relationship with the remitter on the check, the third party beneficiary of the check, or the distributor of the check?

3. How were the funds derived from the check subsequently disbursed and to whom and for what reason?

4. What is the source of the $30,200 in funds as disclosed to Newton by any party?

## FACTS

On July 19, 1989, a federal grand jury in the Southern District of Florida issued a *subpoena duces tecum* ordering Jerald W. Newton, a lawyer, to appear before the grand jury and bring the financial documents related to an unidentified client, "John Doe." The government requested "[a]ny and all documents and records relating to the delivery, receipt and disbursement of cashier's check number 668917 in the amount of $30,200 dated 10/7/87, payable to [J]erald W. Newton, including but not limited to, cash receipts journal, cash disbursements journal, general ledger, invoices or other books of original entry."

Newton moved to quash the subpoena claiming that the subpoena sought information protected by the attorney-client privilege and the work product doctrine. John Doe, the client, moved to intervene and to quash the grand jury subpoena citing similar grounds and alleging that the subpoena violated his sixth amendment right to assistance of counsel.

In response to the motions, the government filed two sealed evidentiary submissions containing grand jury evidence protected from disclosure under Federal Rule of Criminal Procedure 6(e). The district court conducted an evidentiary hearing on the motions to quash, including an *in camera* presentation to determine the existence of the attorney-client relationship and to establish the confidential nature of the communications between Newton and John Doe. The government responded by presenting testimony *in camera* to establish the applicability of the crime-fraud exception.

On December 11, 1989, the district court denied the motions to quash the subpoena, ruling that the "necessary particularized showing of the asserted attorney-client privilege" had not been established. The district court further found that even if the attorney-client privilege existed, the

government "fulfilled its consequent burden of making the requisite showings pursuant to the two-pronged test establishing the 'crime-fraud' exception." (Citing *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223 (11th Cir.1987)). The district court granted John Doe's motion to intervene and denied his motion to quash the subpoena.

## PROCEDURAL HISTORY

On March 7, 1990, the district court granted Newton use immunity and ordered him to testify and produce documents under the terms of 18 U.S.C. §§ 6002–6003. Later that day, Newton appeared before the grand jury in his personal capacity and as custodian of records for Jerald W. Newton, P.A. Newton refused to answer certain questions or to produce subpoenaed documents, claiming the attorney-client privilege. The government subsequently filed a motion requesting that the district court issue an order to show cause why Newton should not be held in contempt of court.

At a compulsion hearing on March 8, 1990, the district court ordered Newton to appear before the grand jury and provide complete answers to the questions and to produce the subpoenaed documents ruled on in the December 11, 1989 order on the motions to quash. When Newton stated that he would continue to refuse to answer those questions or provide the requested documents, the district court adjudged Newton to be in direct and continuing contempt for failure to obey the compulsion order. By agreement of the parties, the district court stayed execution of the contempt order pending the determination of this appeal. Newton filed a notice of appeal from the contempt order, and John Doe filed a notice of appeal from the compulsion order. This consolidated appeal follows.[2]

---

5. Did Mr. Newton handle any financial, business and/or loan transactions for any and all parties connected to the check?

6. Questions related to the delivery of the check to Newton and whether Newton trav-

eled to Florida to receive or transport funds on behalf of any party connected to the check.

2. For simplicity, we refer only to Newton as the appellant. *Newton's client did not submit a separate brief.*

## CONTENTIONS OF THE PARTIES

Newton contends that the identity of John Doe falls within the attorney-client privilege, pursuant to the "last link" doctrine. Because the government is unaware of the identity of John Doe, the issuer of the check, and unaware of the identity of the third party who sent the check, Newton argues that the government cannot establish the existence of the crime-fraud exception to the attorney-client privilege. According to Newton, the identity of his client is further protected by his obligation under the California Business and Professions Code, § 6068(e) to maintain the confidences and secrets of his client. Relying upon the ninth and tenth amendments reserving certain powers to the people and to the states, Newton, a member of the California bar, argues that the federal government may not interfere with the regulation of lawyers in California by requiring him to disclose information that the state of California deems privileged. Newton also contends that his refusal to testify is supported by the sixth amendment to the Constitution because the government was required to offer evidence of the necessity of obtaining the information requested and because the subpoena places Newton in an adversarial position against his client.

The government contends that the attorney-client privilege does not protect the information it seeks from Newton. The government contends that even if the attorney-client privilege applies, the district court properly found that the crime-fraud exception negates the privilege. The government also contends that the remaining constitutional claims are insufficient as a matter of law.

## ISSUES

The issues in this case are (1) whether the district court properly ruled that the attorney-client privilege does not protect the information sought, and (2) whether the information sought is otherwise protected

under either the sixth, ninth, or tenth amendments.

## DISCUSSION

Because it involves a mixed question of law and fact, our standard of review for the district court's determination of the applicability of the attorney-client privilege is plenary. *See United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (*in banc*), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### I. Attorney–Client Privilege

■ "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice...." *In re Grand Jury Subpoena of Slaughter,* 694 F.2d 1258, 1260 (11th Cir.1982). This court's leading case on the attorney-client privilege is *United States v. Jones,* 517 F.2d 666 (5th Cir.1975).[3] *Jones* holds that a claim of attorney-client privilege requires proof of the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Jones,* 517 F.2d at 670 (quoting *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950)).

■ The identity of a client and the receipt of fees from a client normally are not privileged. *Jones,* 517 F.2d at 671. In *Jones,* the court held that the identity of an unknown client is protected by the attor-

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (in banc), the court adopted as precedent all decisions of the former Fifth Cir-

cuit Court of Appeals decided prior to October 1, 1981.

ney-client privilege where disclosure of the identity would also reveal the privileged motive for the client to seek legal advice. *Jones*, 517 F.2d at 674-75. The government sought the names of unidentified clients who had paid substantial attorney's fees for certain *known* clients. Because the large amounts of the fee payments might incriminate the unidentified clients, the court found that "the income tax aspects of the government's inquiry demonstrate a strong independent motive for why the unidentified clients could be expected to (1) seek legal advice, and (2) reasonably anticipate that their names would be kept confidential." *Jones*, 517 F.2d at 674. *See Baird v. Koerner*, 279 F.2d at 633 (client identities not discoverable where disclosure of names would disclose motive [advice regarding underpayment of taxes] for retaining counsel). *See also United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977) (privilege exists "where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought.").

■ This exception to the normal rule that a client's identity is not privileged falls within what is known as the "last link" doctrine. Under the "last link" doctrine, the identity of a client may become privileged because "it may well be the link that could form the chain of testimony necessary to convict an individual of a federal crime." *Baird v. Koerner*, 279 F.2d 623, 633 (9th Cir.1960). Since *Jones*, this court has consistently held that the "last link" doctrine is only applicable to rare situations "where the disclosure of fee information would give the identity of a previously undisclosed client/suspect." *In re Grand Jury Subpoena of Slaughter*, 694 F.2d 1258, 1260 (11th Cir.1982). In essence, the last link doctrine extends the protection of the attorney-client privilege to nonprivileged information—the identity of the client—when "disclosure of that identity would disclose *other*, privileged communications (e.g., motive or strategy) and when the incriminating nature of the privileged communications has created in the client a reasonable expectation that the information would be kept confidential." *Rabin v. United States*, 896 F.2d 1267, 1273 (11th Cir.1990) (emphasis original).

■ The government is unaware of the identity of Newton's client and the third-party issuer of the $30,200 cashier's check. In addition to requesting the name of the unidentified client, the government seeks the name of the third-party check issuer, any information the client communicated to the lawyer concerning payment of the cashier's check, and any information the client communicated to the lawyer concerning two "other" individuals. Newton argues that his client's identity will provide the last link necessary to indict the client. According to Newton, disclosure of the client's name will provide additional privileged information about the client's relationship with the third-party issuer of the check, and possibly the client's relationship with the target of the government's money laundering investigation.

We hold that the district court properly ruled that the attorney-client privilege does not protect information concerning the client's name and the fees paid. On this record, we are not persuaded that disclosure of this usually nonprivileged information will reveal other privileged information. In fact, the appellant raises interesting legal arguments, but failed to establish in the district court the necessary facts to support the arguments. Because we hold that the attorney-client privilege does not apply to the information regarding client identity and fees, we do not reach the crime-fraud exception issue.

According to Newton, his client hired him in 1987 in connection with the client's indictment in a separate criminal matter. Thus, the client did not seek Newton's legal advice reasonably anticipating that his name would be kept confidential. In this case, disclosure of the client's identity will also reveal the fact of prior indictments or criminal record. Such records are public documents and thus not privileged. Disclosure of the client's identity also will link the client to the still unidentified third per-

son who arranged for the payment of the attorney's fees.[4] The mere fact that "John Doe's" attorney's fees were paid by an unidentified third person, however, does not disclose privileged communications, motive, or strategy. On the record in this case, disclosure of the client's identity will merely reveal the client's name, and thus the identity is not protected by the attorney-client privilege.

Similarly, this circuit has consistently held that information concerning payment of attorney's fees is not generally privileged. *United States v. Sims*, 845 F.2d 1564, 1568 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 395, 102 L.Ed.2d 384 (1988); *In re Grand Jury Subpoena of Slaughter*, 694 F.2d 1258, 1260 (11th Cir.1982). Such information is privileged only if "more than simple fee information will necessarily come to light by compliance with the order, thereby uncovering privileged information." *Slaughter*, 694 F.2d at 1260. We therefore hold that Newton's client's name and the fees paid are not protected by the attorney-client privilege.

## II. Ninth and Tenth Amendment Claims

■ Newton argues that disclosure of the information regarding client identity and fees would also breach the California state bar rules of confidentiality in violation of the ninth and tenth amendments to the United States Constitution. This argument fails because questions of attorney-client privilege in this circuit are governed by federal common law. "Under F.R. Crim.P. 26, the principles of the common law, 'as they may be interpreted by the courts of the United States in the light of reason and experience,' govern over state law in matters of evidence, which includes privileges." *Jones*, 517 F.2d at 670. A state's attorney-client privilege rules cannot prevent compelled disclosure where federal law precludes applicability of the common law privilege.

## III. Sixth Amendment Claims

■ Newton also argues that the order to compel his testimony violates his client's

sixth amendment right to counsel. He argues that the sixth amendment compels the government to make a preliminary showing that the information is essential and cannot be acquired through another source. This court has repeatedly rejected the argument that the sixth amendment requires the government to make a preliminary showing of relevance and need before a lawyer can be compelled to appear before a grand jury. *Eg. United States v. Sims*, 845 F.2d 1564, 1569 (11th Cir.1988); *In re Grand Jury Investigation (Harvey)*, 769 F.2d 1485, 1487 (11th Cir.1985). We again decline to do so, despite contrary rulings in other circuits. *See, e.g., In re Special Grand Jury Number 81–1 (Harvey)*, 676 F.2d 1005, *vacated* 697 F.2d 112, 113 (4th Cir. 1982) (opinion vacated because Harvey became a fugitive).

■ Newton also argues that requiring disclosure in this case would violate his client's sixth amendment right to counsel of choice. Doe, however, has counsel at this time. Furthermore, nothing in the record indicates that, should disclosure be required, the relationship between Doe and Newton would be severed. Nor can we conclude from the record that, should the relationship be severed, Doe will be unable to secure other counsel. In virtually identical circumstances, this court held that such a sixth amendment claim was not ripe for adjudication. *See Rabin v. United States (In re Grand Jury Proceedings)*, 896 F.2d 1267, 1277 (11th Cir.1990). We therefore hold that Newton's "sixth amendment right to counsel of choice" claim is not yet ripe for adjudication.

## CONCLUSION

The district court properly found that the attorney-client privilege does not protect the client's identity or the fees paid—information which is generally nonprivileged—unless such information will reveal other, privileged information. Likewise, such information is not protected from disclosure

---

4. Before the grand jury, Newton testified that he did not know the name of the third person who

called to ascertain whether the cashier's check had arrived.

under the sixth, ninth, or tenth amendments to the United States Constitution.

Having found that the district court properly ruled on the issues regarding client identity and fees, we remand this case to the district court to allow it to fully and separately address issues regarding other questions and documents.

Accordingly, we affirm the district court's finding of contempt and remand for further proceedings consistent with this opinion.

AFFIRMED AND REMANDED.