**Kim ADLER and Fredda McDonald, Plaintiffs,**

v.

**WALLACE COMPUTER SERVICES, INC. and Robert Young, Defendants.**

**No. CIV.A.1:00–CV–1459–RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 13, 2001.

---

Benton J. Mathis, Jr., Mary Anne Ackourey, Freeman, Mathis & Gary, Atlanta, GA, for plaintiffs.

Stephen Xavier Munger, Lisa A. Schreter, Christopher Todd Van Dyke, Susan L. Kuss, Jackson, Lewis, Scnitzler & Krupman, Atlanta, GA, for defendants.

## ORDER

STORY, District Judge.

Plaintiffs bring this putative class action alleging systemic gender discrimination and

sexual harassment. Before the Court for consideration are Defendant Wallace Computer Services, Inc.'s ("Wallace") Motion for Summary Judgment [59–1], Defendant Wallace's Motion To Stay Additional Class Discovery [60–1], Plaintiffs' Motion To Compel Deposition Testimony of Steven L. Carson [62–1], Plaintiffs' Motion for Reconsideration [67–1], Plaintiffs' Motion for Leave To File Second Amended Complaint [67–2], Plaintiffs' Motion To Extend Time For Response [71–1], and Plaintiffs' Motion To Deny Motion for Summary Judgment [74–1]. As a preliminary matter, Plaintiffs' Motion To Extend Time for Response [71–1] is hereby **GRANTED** *nunc pro tunc,* and the Court will consider the out-of-time response when ruling on the pending motion for summary judgment. After reviewing the record and considering the arguments of the parties, the Court enters the following Order.

### Background

In this civil rights case, Plaintiffs allege claims of gender discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"). Plaintiffs initially sought to represent all female employees in Wallace's sales force, but the parties have agreed to limit the membership of the putative class to female employees since January 1, 1996, who have held a position of sales representative or a higher position in the Wallace sales group. More specifically, Plaintiffs allege a pattern and practice of discrimination in Wallace's employment practices, demonstrated by the treatment of women in terminations, promotions, pay, and job assignments. The Complaint also alleges that these women were subjected to a hostile work environment. Plaintiffs seek compensatory and punitive damages, back pay and front pay, and injunctive and declaratory relief on their individual claims and on behalf of the putative class.

Wallace's direct sales force is a national force divided into four geographic regions, and each geographic region is headed by a regional vice president ("RVP"). Approximately fourteen general managers report to each RVP. Until recently, regional managers or district managers reported to the RVPs. Defendant Wallace generally promotes from within its own sales force, so a new employee would start as an entry-level sales representative and work her way up the corporate structure. Specific accounts are assigned to sales representatives by management. Since commissions from sales constitute a large portion of a sales representative's income, being assigned a large volume account might be considered a promotion. The next step up the ladder is to the position of district manager, and these employees receive salaries along with certain bonuses as defined by a written policy. Promotions to the district manager position are made by regional and general managers with the approval of the RVP and the vice president of sales. There is no formal application process, and selection criteria are subjective. Plaintiffs allege that women were paid less, assigned less favorable accounts, terminated on the basis of sex, and not promoted to management positions.

In their brief in response to the motion for summary judgment, Plaintiffs include detailed accounts of their individual experiences, but only limited accounts of Adler's and McDonald's experiences will be included here because the summary judgment motion focuses on the class claims. Both Adler and McDonald began employment with Wallace in late 1997, and, in November 1998, both were assigned to work on Delta Air Lines' commercial printing. McDonald was assigned to head the group working on Delta's account. Adler was terminated in February 1999, and McDonald was demoted at the same time. For more details about Plaintiffs' individual claims, see Pl.'s Br. in Resp. to Mot. for Summ. J. at 2–5.

### Motion for Summary Judgment

Defendant Wallace moves for summary judgment in its favor on the class claims asserted in this action, contending that the putative class cannot satisfy the requirements for certification included in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). According to Defendant, Plaintiffs fail to satisfy the requirements of Rule 23(b)(2) because the predominant relief sought is damages. Second, Defendant asserts that no Rule 23(b)(3) class can be certified because individual issues predominate over common ones.

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ As stated previously, class certification is governed by Rule 23, and Plaintiffs bear the burden of establishing the propriety of maintaining a suit as a class action. *Rutstein v. Avis Rent–A–Car Systems, Inc.*, 211 F.3d 1228 (11th Cir.2000), *cert. denied sub nom. Zeirei Agudath Israel Bookstore v. Avis Rent–A–Car Sys., Inc.*, — U.S. —, 121 S.Ct. 1354, 149 L.Ed.2d 285 (2001). Title VII cases usually are certified as class actions only after "rigorous analysis." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). For all putative class actions, every requirement of Rule 23(a), numerosity, commonality, typicality, and adequate representation, must be satisfied. However, in arguing for the dismissal of the class claims in this action, Defendant assumes that Plaintiffs could satisfy these Rule 23(a) requirements. The Court suspects that a question could be raised as to whether the Rule 23(a) commonality and typicality requirements could be met, but this analysis shall proceed under Defendant's assumption for the purpose of this Order. *See* Fed.R.Civ.P. 23(a) (governing situation where "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001) (stating that showing commonality requires issues that are subject to class-wide proof and explaining that for typicality Plaintiffs must demonstrate that they have same interests and suffered same injuries as class members). Satisfying the commonality requirement would be especially difficult with regard to the hostile work environment claim asserted in this action because that claim includes a subjective component. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (requiring plaintiffs in hostile work environment action to show that they subjectively perceived environment to be abusive). Nonetheless, the analysis in this Order focuses on whether the requirements of Rule 23(b) have been met.

Once the four prerequisites of Rule 23(a) are established, a class action may be maintained if at least one of the requirements of Rule 23(b) is satisfied. Defendant argues that this purported class action cannot be maintained under either 23(b)(2) or 23(b)(3) and that a hybrid approach is not appropriate in the present case.

### A. Certification Under Rule 23(b)(2)

■ Under 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). According to the Advisory Committee notes, this type of class action is not appropriate if the predominant relief sought is money damages. Fed.R.Civ.P. 23 advisory committee's note. Monetary relief predominates unless it is incidental to the equitable relief sought. *Murray*, 244 F.3d at 812 (*quoting Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998)).

■ Since Plaintiffs here seek compensatory and punitive damages in addition to declaratory and injunctive relief, the Court must consider whether the monetary relief is incidental to the injunctive relief requested. According to the Fifth Circuit, monetary relief is incidental if damages "flow directly from liability to the class *as a whole* on the claims forming the basis of injunctive or declaratory relief." *Allison*, 151 F.3d at 415 (emphasis in original). Incidental damages are automatic once liability is established, and they should be calculable by means of objective standards. *Id.* Damages are not incidental to injunctive relief if they are dependent on the class members' individual

circumstances. *Id.* The *Allison* court concluded that the plaintiffs' claims for compensatory damages were not sufficiently incidental to permit certification of a 23(b)(2) class action because specific individualized proof is necessary when a plaintiff must show actual injury. *Id.* at 416–17. Furthermore, the court opined that a finding that a defendant engaged in a pattern and practice of discrimination did not mandate the assessment of punitive damages. *Id.* at 417. The *Allison* court then affirmed the denial of 23(b)(2) class certification on the basis that the claims for compensatory and punitive damages required individualized proof and could not be considered incidental to the injunctive and declaratory relief requested.

The Eleventh Circuit recently considered the same question, citing the *Allison* view with approval. *Murray*, 244 F.3d at 812. The question in *Murray*, a disability discrimination case, was whether the plaintiffs' claims for compensatory damages to remedy "pain and suffering, mental anguish, and humiliation" were incidental to their claims for injunctive and declaratory relief. *Id.* The Eleventh Circuit found that the plaintiffs would not automatically be entitled to compensatory damages as a group remedy simply because liability was established, so a Rule 23(b)(2) class encompassing the damage claims would be inappropriate. *Id.* at 812. Therefore, the putative class's damage claims predominated over the claims for equitable relief because assessing damages would require inquiry into each class member's individual circumstances.

■ Such is the case here. Even if Plaintiffs could prove that Wallace engaged in a pattern and practice of discrimination against women, every member of the class would not necessarily be entitled to damages. Each class member would have to show actual damage to receive compensation for her loss. One example of an individualized issue that would have to be determined to award compensatory damages is Adler's claim that she has suffered compensable severe emotional distress because of the discrimination she endured. McDonald similarly claims that she has suffered emotional distress and mental anguish as a result of her termination. One can only imagine that other class members could make numerous particularized arguments to support claims for compensatory damages. An award of punitive damages also would require a fact-specific inquiry into the circumstances of each individual plaintiff. These individual damage issues have no place in a class action certified under Rule 23(b)(2) where the focus is intended to be equitable relief. The damages allegedly suffered by the putative class members are not incidental; instead, they are dependent on the subjective differences of each class member's circumstances. For the foregoing reasons, certification of a Rule 23(b)(2) class is not appropriate.

**B. Certification Under Rule 23(b)(3)**

■ Alternatively, a class may be certified under Rule 23(b)(3) if the Rule 23(a) requirements are met and "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Stated differently, issues subject to generalized proof must predominate over those issues subject to individualized proof. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997). A plaintiff must satisfy both the "predominance" and "superiority" requirements to fulfill Rule 23(b)(3)'s requirements. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 2245–46, 138 L.Ed.2d 689 (1997). The Rule offers guidance to courts by listing factors pertinent to the necessary inquiry. These factors include: (1) the class member's interest in individual control of her action; (2) pending litigation concerning issues involving class members; (3) desirability of concentrating the claims in one forum; and (4) difficulties expected in managing the class action. Fed. R.Civ.P. 23(b)(3). Rule 23(c)(2) also requires that potential class members be provided notice and a right to opt out of a class certified under Rule 23(b)(3). Plaintiffs in this case contend that the common question of Wallace's pattern and practice of discrimination predominates over the individual issues in the case and that resolution of the class members' claims in a class action is superior to the pursuit of individual lawsuits.

Predominance previously was found lacking in an employment discrimination case because of the individual issues raised by the compensatory and punitive damages claims. *Allison*, 151 F.3d at 419. The Fifth Circuit in *Allison* noted that individual issues in such a case might include the kind of discrimination each plaintiff encountered, the emotional and physical effect of the discrimination on the plaintiff, whether plaintiff sought medical treatment, what type of treatment was received, and the expenses incurred as a result of the discrimination. *Id.* These individual issues would force any court to try the class member's claims separately. *Id.* According to the *Allison* court, the necessity of separate trials to determine the issues unique to each plaintiff created manageability problems. *Id.* Because of these problems, class litigation of the employment discrimination claims was not superior to individual litigation. *Id.* at 420.

The Eleventh Circuit considered Rule 23(b)(3)'s predominance and superiority requirements in two cases alleging a pattern and practice of discrimination. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997); *Rutstein v. Avis Rent–A–Car Systems, Inc.*, 211 F.3d 1228 (11th Cir. 2000), *cert. denied sub nom. Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car Sys., Inc.*, —— U.S. ——, 121 S.Ct. 1354, 149 L.Ed.2d 285 (2001). First, in *Jackson*, the plaintiffs alleged that the defendant followed a pattern and practice of race discrimination against customers and employees. 130 F.3d at 1001. The *Jackson* court found that this single common issue did not predominate over the numerous individual issues inherent in such a case. *Id.* at 1005. Some examples of individual issues in the case were whether a patron was denied a room, whether a room was available, and whether there was a legitimate reason unrelated to race for not renting a room to the patron or giving him an inferior room. *Id.* at 1006.

Second, the Eleventh Circuit analyzed predominance and superiority in the context of a disability discrimination case. In *Rutstein*, the plaintiffs alleged that the defendant engaged in a pattern and practice of discriminating against Jewish customers. 211 F.3d at 1230. The court states that in determining whether common questions predominate,

the district court should consider "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id.* at 1234. When proof of individualized facts is necessary even for initial determinations like liability, class action treatment is not appropriate. *Id.* at 1235–36. Again, the individual issues related to compensatory and punitive damages made class action treatment even less inviting since actual injury must be shown. *Id.* at 1239.

■ Even with a finding of class-wide discrimination, each plaintiff in the present case must, at the very least, show that she suffered an adverse consequence as a result of discrimination. *See Rutstein*, 211 F.3d at 1237–38 (addressing class-wide showing of discriminatory pattern and practice in employment cases and noting that each plaintiff must still show consequence like not being hired for job); *see also Cooper v. Federal Reserve Bank*, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) (stating that claim for employment discrimination focuses on reason for particular employment decision); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977) (explaining that after discriminatory policy is proven employer can demonstrate that applicant was denied employment for lawful reasons). Wallace's pattern and practice of discrimination may be relevant in a particular case, but it does not establish that the company discriminated against each member of the putative class. Individual issues still exist in this case. For instance, each plaintiff must show that she was denied a promotion, paid less, or terminated on the basis of discrimination. As to each claim, Defendant would have the opportunity to show that the employee was refused a promotion, paid less, or terminated for a legitimate nondiscriminatory reason. These individual issues related to liability predominate over the one common issue noted by Plaintiffs–Wallace's alleged pattern and practice of discrimination. In fact, Defendant can escape liability as to an individual plaintiff by showing that she would have, for instance, been terminated even in the absence of the pattern and practice of discrimination. Significantly, these individual issues relate only to the claims of systemic gender

discrimination. Additional plaintiff-specific issues could be raised with regard to the claim of hostile work environment sexual harassment, especially since that claim requires a showing that the employee perceived the environment to be abusive. The predominance problem here is compounded by the fact that the compensatory and punitive damages requested require individualized proof. Since so many issues in this case cannot be determined on a class-wide basis, the superior method of adjudicating these controversies is separate actions.

Contrary to Plaintiffs' assertion, dismissing the class claims alleged in this case is not tantamount to foreclosing certification of a class action in any case alleging a pattern and practice of employment discrimination. For example, a case seeking purely equitable relief easily could be certified pursuant to 23(b)(2), and a court could fashion an order prohibiting the defendant from discriminating in the future. *Rutstein*, 211 F.3d at 1239 (noting that case requesting equitable remedies is different because equitable relief is possible without showing actual injury to each individual plaintiff). Back pay, since it is considered an equitable remedy, *might* even be awarded in such an action. A Rule 23(b)(2) class action could provide a remedy for systemic disparate treatment in employment so long as the plaintiffs do not seek compensatory and punitive damages. Hence, the Court is not leaving employees who have experienced discrimination with no viable remedy.

### C. Possibility of Certification as a "Hybrid" Class

Plaintiffs also encourage the Court to consider three other "alternative" certification possibilities. The first, certification for all purposes under Rule 23(b)(3), is not a viable option because this case is not appropriate for Rule 23(b)(3) certification at all. The second option, referred to as "divided certification," proposes the certification of a Rule 23(b)(2) class for the purpose of equitable relief and a Rule 23(b)(3) class for the issue of damages. Because individual issues predominate, Plaintiffs' claims are not amenable to Rule 23(b)(3) certification, especially with regard to the issue of damages. Removing the equitable claims from the picture does

not fix the Rule 23(b)(3) certification problem. The final option advocated by Plaintiffs is certifying a Rule 23(b)(2) class for both equitable relief and damages and providing all class members with notice. This option also fails to remedy the problems with certifying this case as a class action. With such a hybrid certification, the Court still would have to face the daunting task of considering each plaintiff's individual circumstances to determine whether Defendant is liable to a particular class member for gender discrimination or for sexual harassment. As discussed in conjunction with 23(b)(3) certification, even if a pattern and practice of discrimination is shown, it does not follow that Defendant is liable to each class member. Furthermore, such a hybrid certification does not resolve the problem with damages since each individual plaintiff would still be required to show actual harm to collect compensatory or punitive damages.

■■■ The Seventh Amendment provides the most compelling justification for denying the request for hybrid certification. The Seventh Amendment guarantees the right to a jury trial "in Suits at common law." U.S. Const. amend. VII. The Supreme Court has made clear that the right to a jury trial applies in suits determining both legal rights and administering equitable remedies. *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970) (quoting *Parsons v. Bedford, Breedlove, & Robeson*, 28 U.S. 433, 447, 3 Pet. 433, 7 L.Ed. 732 (1830)). Because the Civil Rights Act of 1991 expressly grants the right to a jury trial when compensatory damages are requested in Title VII cases, and both parties have demanded such, a jury trial is required. 42 U.S.C. § 1981a(c). In the case sub judice, some factual issues related to the damages claims are also relevant to the asserted equitable claims. The litigants have the right to the determination of these issues by a single jury. *Ross*, 396 U.S. at 538–39, 90 S.Ct. 733 ("[W]here equitable relief and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims.") Thus, adjudicating

this case would require a jury to determine the individual issues related to Plaintiffs' employment discrimination claims and hostile environment sexual harassment claims before the Court rules on equitable remedies. *See Allison,* 151 F.3d at 423–25 (discussing difficulties in hybrid certification of legal and equitable claims); *Miller v. Hygrade Food Prods. Corp.,* 198 F.R.D. 638, 644 (E.D.Pa. 2001). Pursuing this course would result in confusion and be overly burdensome to the resources of the court system.

Accordingly, Defendant's Motion for Summary Judgment [59–1] is hereby **GRANTED**, and Plaintiffs' class claims are dismissed. Since the Court finds class certification improper, Plaintiffs may pursue only their individual claims in this action. Moreover, Defendant's Motion To Stay Additional Class Discovery [60–1] is hereby **GRANTED**. Finally, Plaintiff asserts that the Court should deny Defendant's Motion for Summary Judgment pending further discovery on the class claims. However, based on the causes of action asserted in the Complaint and the relief requested, class treatment is not appropriate as a matter of law. Further development of the facts will not heal the infirmity of the class claims; therefore, Plaintiffs' Motion To Deny the Motion for Summary Judgment [74–1] must be **DENIED**.

### Motion To Compel Deposition of Steven Carson

Plaintiffs move to compel the testimony of Steven Carson, the Vice President, General Counsel, and Secretary of Defendant Wallace. Defendant designated Mr. Carson as the representative of the corporation pursuant to Federal Rule of Civil Procedure 30(b)(6), and Plaintiffs took Mr. Carson's deposition. Mr. Carson testified regarding the terminations of Adler and McDonald, the investigation of Ms. McDonald's complaint of gender discrimination, and conversations with Wallace representatives about the counterclaim asserted against Plaintiffs in this action. While Mr. Carson was willing to discuss these subjects to some extent, he also asserted attorney-client privilege and refused to answer a number of Plaintiffs' questions concerning the same subject matter. For instance, Mr. Carson described conversations with Wallace management about possible terminations and whether allegations of sex dis-

crimination could be expected. However, Mr. Carson refused to disclose the legal advice that he offered during these conversations. Plaintiffs assert that Mr. Carson should be compelled to answer these questions because any attorney-client privilege that could have been asserted was waived when Mr. Carson disclosed information during his deposition that would have otherwise been privileged.

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Proceedings 88–9,* 899 F.2d 1039, 1042 (11th Cir.1990) (quoting *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir. 1984)) (en banc). This privilege is "one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 2084, 141 L.Ed.2d 379 (1998). Recognition of attorney-client privilege is intended to encourage frank communication with an attorney. *Swidler & Berlin,* 524 U.S. at 403, 118 S.Ct. 2081. The party claiming the privilege bears the burden of proving the existence of the privilege. *See, e.g., In re Grand Jury Investigation (Schroeder),* 842 F.2d 1223, 1225 (11th Cir.1987). The party claiming the privilege must establish the following elements: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which attorney was informed by the client without the presence of strangers for the purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client. *In re Grand Jury Proceedings 88–9,* 899 F.2d at 1042. This analysis focuses on waiver of the privilege.

The attorney-client privilege might be waived: (1) when a client testifies concerning portions of the attorney-client communication; (2) when a client places the attorney-client relationship directly in issue; and (3) when a client asserts reliance on attorney advice as an element of the defense. *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1418 (11th Cir.1994). In the instant

case, Mr. Carson served a dual role. First, he was the attorney for the corporation. Second, he served as the corporation's representative for the purpose of discovery. In this second role, Mr. Carson, as the representative of the client, could waive the attorney-client privilege by testifying to portions of the attorney-client communication. In fact, Mr. Carson did disclose the statements made by other corporate representatives seeking advice from him in his role as attorney. These disclosures waived the privilege, and Mr. Carson cannot now refuse to fill in the remaining facts by claiming attorney-client privilege. Accordingly, Plaintiffs' Motion To Compel Deposition Testimony of Steven L. Carson [62–1] is hereby **GRANTED**.

### Motion for Reconsideration

 Plaintiffs move for reconsideration of the Court's Order denying leave to amend the Complaint. Alternatively, Plaintiffs renew their motion to amend the Complaint. Generally, a motion for reconsideration should not be used to reiterate arguments that have been made previously, but such a motion should be reserved for extraordinary circumstances, such as the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice. *See, e.g., Deerskin Trading Post, Inc. v. United Parcel Serv. of America, Inc.,* 972 F.Supp. 665, 674 (N.D.Ga.1997). Moreover, a reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation. *Escareno v. Noltina Crucible and Refractory Corp.,* 172 F.R.D. 517, 519 (N.D.Ga.1994), (citing *O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir.1992)).

Plaintiffs previously sought to amend their Complaint to allege a claim for retaliation, relying on Defendant Wallace's filing of counterclaims in this lawsuit as a retaliatory action. The Court denied leave to amend on the basis that the facts alleged in the proposed amendment to the Complaint did not support the contention that the counterclaims pursued by Defendant Wallace were retaliatory. Plaintiffs purportedly offer evidence acquired after the Court's ruling that shows that Defendant Wallace's actions against Ms. McDonald were motivated by an unlawful animus. Defendant submits that the "new" evidence offered by Plaintiffs was available approximately three months prior to the Court's ruling denying leave to amend. Most importantly, some of the "new" evidence cited is included in the deposition of one of the plaintiffs. Clearly, this information was available to Plaintiffs' counsel when the request for leave to amend the Complaint was filed. In addition, Defendant correctly points out that the insufficient factual allegations offered by Plaintiffs in support of their earlier motion are not an appropriate ground for reconsideration. Plaintiffs have neither shown the Court that there is new evidence not available during the pendency of the motion for leave to amend nor a change in the law, clear error, or manifest injustice. Therefore, the Court declines reconsideration of the earlier Order. Accordingly, Plaintiffs' Motion for Reconsideration [67–1] is hereby **DENIED**, and Plaintiffs' Motion for Leave To File Second Amended Complaint [67–2] is hereby **DENIED**.

### Conclusion

Plaintiff's Motion To Extend Time for Response [71–1] is **GRANTED,** *nunc pro tunc;* Defendant Motion's for Summary Judgment [59–1] is **GRANTED;** Defendant's Motion To Stay Additional Class Discovery [60–1] is **GRANTED;** Plaintiff's Motion To Deny the Motion for Summary Judgment [74–1] is **DENIED;** Plaintiff's Motion To Compel Deposition Testimony of Steven L. Carson [62–1] is **GRANTED;** Plaintiff's Motion for Reconsideration [67–1] is **DENIED;** and Plaintiff's Motion for Leave To File Second Amended Complaint [67–2] is **DENIED**.