[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11821
_____

D. C. Docket No. 4:11-cr-00012-RH-CAS-1

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

versus

LENNIE FULWOOD,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 16, 2014)

Before PRYOR, Circuit Judge, and WOOD[*] and EDENFIELD,[**] District Judges.

PER CURIAM:

---

[*] Honorable Lisa Godbey Wood, Chief United States District Judge for the Southern District of Georgia, sitting by designation.

[**] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

Lennie Fulwood appeals his conviction on four counts of tax evasion and his 57-month prison sentence. He raises myriad arguments about the fairness of his trial and the sentencing guidelines calculation. After review, and with the benefit of oral argument, we affirm.

## I. BACKGROUND

The United States charged Fulwood with four counts of tax evasion for the years of 2006 through 2009 as well as with twenty counts of structuring currency transactions to evade reporting requirements. Assistant Federal Defender William Clark provided representation from early in the case through trial.

Just prior to the original trial date, witness David Edwards contacted Clark with information that could constitute a new defense for Fulwood. Edwards, a lottery winner and old acquaintance of Fulwood, told Clark that he had gifted Fulwood one million dollars from his lottery winnings. Clark reacted with hostility because Edwards's story contradicted Fulwood's account to the attorney. Fulwood then travelled from Florida to Kentucky—in violation of the terms of his pretrial release—to film a statement by Edwards regarding the large gift. At the time of the videotaped statement, Edwards was confined to a nursing home with two amputated legs and multiple other ailments.

2

Fulwood returned to Florida and provided Clark with a DVD of Edwards's statement, upon receipt of which, Clark filed for a continuance of the trial and provided a copy of the DVD to the prosecutor.  The Government then investigated and contacted Edwards, at which point he recanted his statement and testified under oath at deposition that he lied about the gift to appease Fulwood and halt his persistent requests for Edwards to lie.

After a total of three continuances, trial occurred in August 2011.  Fulwood made an unsuccessful motion to replace Clark with other appointed counsel immediately before opening arguments.  During trial testimony, a police officer referenced "bootleg, counterfeit DVDs," and another witness referenced "illegal clubs."  Witnesses also provided testimony about Fulwood's finances and the prosecution presented Edwards's videotaped deposition.  The jury convicted Fulwood on all tax evasion charges but deadlocked or acquitted on all currency transaction charges.

The trial court sentenced Fulwood to 57 months of incarceration based upon a total offense level of 22 and a Criminal History Category II.  The base offense level was 18 and the court added two points for obstruction of justice and two points for magnitude of the loss.  The court also ordered Fulwood to pay $285,044.00 in restitution and serve a three-year term of supervised release.  The court calculated tax loss based on a 28% rate.

## II. DISCUSSION

Fulwood raises nine enumerations of error for appeal. After careful consideration of the record, the Court summarily holds that the arguments of witness tampering, deprivation of choice of counsel, discovery violations, cumulative error, and improper denial of post-trial motions lack merit. The Court takes up the remaining arguments.

### A. Attorney-Client Privilege

Fulwood argues that Clark breached the attorney-client privilege by revealing Edwards's DVD recording to prosecutors upon receipt. He further argues that Federal Rule of Criminal Procedure 16 excludes the videotaped statement from reciprocal discovery obligations. The Court reviews Sixth Amendment right to assistance of counsel claims *de novo*. *United States v. Terry*, 60 F.3d 1541, 1543 (11th Cir. 1995). The Defendant bears the burden to establish that a communication was privileged. *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003).

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice . . . ." *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990). In order to establish a valid privilege, Fulwood must establish:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is (the)

4

member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975).

Clark did not disclose a communication by Fulwood, but rather disclosed the video of Edwards. Fulwood cannot claim attorney-client privilege on this ground alone. Furthermore, "[c]ourts have refused to apply the privilege to information that the client intends his attorney to impart to others." *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976). Fulwood obviously took this "shotgun deposition" with the intent of presenting it for his benefit at trial. As the Government rightfully remarks, Fulwood "never intended for the Edwards video to remain confidential; he only wanted to hide it long enough to sandbag the prosecution." Brief for Appellee at 27.

Fulwood's reliance on the discovery segment of the Federal Rules of Criminal Procedure is off target. Clark properly provided the video pursuant to Federal Rule of Criminal Procedure 16(b)(1)(A) & (c), which requires prompt disclosure of "data" and "photographs." The DVD is nothing more than a compilation of sound data and moving photographs. The reciprocal discovery rule, 16(b)(2)(A), does not authorize inspection of "reports, memoranda, or other

5

documents made by the defendant." But here, Edwards made the statement; Fulwood merely produced (and apparently directed) the film. Clark did not violate the attorney-client privilege by disclosing the video of Edwards.

## B. Ineffective Assistance of Counsel

Fulwood argues that Clark's representation constitutes ineffective assistance of counsel. "Except in the rare instance when the record is sufficiently developed, we will not address claims for ineffective assistance of counsel on direct appeal." *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005). Fulwood argues that the Court benefits from the written record of a Florida Bar Complaint, but Fulwood has only presented two letters written by Clark in his own defense. Doc. No. 118. This is far from a record sufficiently developed to analyze Fulwood's claim pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. The Court therefore declines to adjudicate the issue of Clark's effectiveness on direct appeal.

## C. Testimony About Counterfeit Goods

Fulwood argues that presentation of testimony regarding counterfeit goods and an illegal nightclub amount to reversible error and prosecutorial misconduct: because none of the charges against Fulwood involved the nature of his business, such questioning amounts to a "clear violation of basic trial procedure." *United States v. Greene*, 578 F.2d 648, 654 (5th Cir. 1978). The Court reviews preserved

6

claims about admission of evidence for abuse of discretion.  *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

A prosecutor may not violate the basic rules of trial practice by offering unprofessional commentary entirely unrelated to the case.  *Greene*, 578 F.2d at 654.  But the prosecutor may present testimony that is "linked in time and circumstances with the charged crime."  *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998).

The term "counterfeit"[1] came up at trial during the testimony of a Tallahassee police officer.  The prosecutor asked about how he came to know Fulwood's business.

> Q.     And did you perform an undercover operation [in Fulwood's music store]?
> A.     Yes, ma'am.
> Q.     What exactly did you do?
> A.     I went into the store with an attempt to buy bootleg, counterfeit DVDs.
> Q.     Okay, what happened when you went there?
> A.     I went to the counter.  I asked for – it was <u>Russell Jenkins</u>, another movie which I knew was still in theaters.

Doc. No. 95 at 185.  This specific testimony came to light as the witness explained his job.  Likewise, Fulwood's commercial landlord mentioned "illegal clubs" on cross-examination in discussing the layout of the space.  Doc. 96 at 323.  This testimony is part of the complete story of the alleged financial offense.

---

[1] Clark objected to the use of the term "counterfeiter."  Doc. No. 95 at 184.  No witness used this term.

7

Furthermore, the nature of Fulwood's business goes to his motive in evading taxation of the income, and evidence of motive is admissible. *United States v. Utter*, 97 F.3d 509, 515 (11th Cir. 1996); *see also* Fed. R. Evid. 404(b)(2) (providing that evidence of crimes, wrongs, or other acts "may be admissible for another purpose, such as proving motive"). Fulwood may have wished to evade taxes on his income to prevent alerting the Government to the nature of his enterprise. The high profit margin nature of Fulwood's business also explains how he amassed $1.1 million in unreported income by selling CDs from a flea market store that shared space with a barber shop and an internet café. "A tax deficiency may be proved by circumstantial evidence . . . ." *United States v. Carter*, 721 F.2d 1514, 1538 (11th Cir. 1984), *vacated in part by United States v. Lightsey*, 886 F.2d 304 (11th Cir. 1989). Under all measures, the district court did not abuse its discretion by admitting this testimony.

### D. Sentencing Guidelines Calculation

Fulwood argues that the district court erred by imposing an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on its finding that he willfully gave false trial testimony, and that the district court erred in determining the appropriate tax-loss calculation under § 2T1.1. With respect to sentencing, the Court reviews the district court's finding of facts for clear error and the

8

interpretation and application of the guidelines *de novo*.  *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006).

Fulwood contends that a finding of willful obstruction of justice is not supported by a neutral view of the evidence.  In relevant part, § 3C1.1 provides for a two-level increase to the offense level when the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  At trial, Edwards's sworn deposition chronicled Fulwood's persistent requests that Edwards lie on his behalf.  Fulwood repeatedly called Edwards, sent him an untraceable phone, and travelled from Florida to Kentucky—in violation of the terms of his pretrial release—to film a false statement by Edwards.  Edwards recanted his statement to prevent any harm to himself, revealing that he initially agreed to make the video in part because he did not believe that an unsworn statement could be used at trial.  Given Fulwood's behavior and Edwards's sworn statement, we are far from being "left with a definite and firm conviction that a mistake has been committed," *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005), and therefore conclude that the district court did not commit clear error in assessing an enhancement for obstruction of justice.

Fulwood contends that the district court erred by calculating the tax loss at a rate of 28% pursuant to § 2T1.1(c)(1)(A), and that the court should have used the

9

20% tax rate of § 2T1.1(c)(2)(A) because he failed to file a return.  § 2T1.1(c)(1) states:  "If the offense involved tax evasion . . . the tax loss shall be treated as equal to 28% of the unreported gross income . . . ."  § 2T1.1(c)(2) states: "If the offense involved failure to file a tax return . . . the tax loss shall be treated as equal to 20% . . . ."

Fulwood indeed failed to file a tax return.  But the crime of failure to file a tax return, 26 U.S.C. § 7203, differs from the provision for tax evasion, 26 U.S.C. § 7201, and Fulwood was charged with and convicted of tax evasion.  When reading § 2T1.1(c) as a whole, the district court selected the correct tax loss calculation using the rate of 28%.

### III. CONCLUSION

Based on the foregoing discussion, we affirm Fulwood's convictions and sentence.  The Court declines to rule on the issue of ineffective assistance of counsel on this direct appeal.

**AFFIRMED.**