**Thomas BUDLONG, Candace Apple, Plaintiffs,**

**v.**

**Bart L. GRAHAM, in his individual and official capacity as Commissioner of the Georgia Department of Revenue, Defendant.**

**Civil Action No. 1:05–CV–2910–RWS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 14, 2006.

Elizabeth Lynn Littrell, Gerald R. Weber, Margaret Fletcher Garrett, American Civil Liberties Union Foundation of Georgia, Inc., Atlanta, GA, for Plaintiffs.

Chad D. Franks, Lourdes G. Mendoza, State of Georgia Law Department, Atlanta, GA, for Defendant.

### ORDER

TORY, District Judge.

Plaintiffs, a purchaser and a seller of non-exempt texts, brought this action in mid-November 2005, challenging the Georgia Sales and Use Tax Code's exemption of certain religious books and papers from the otherwise mandatory sales tax. In particular, Plaintiffs challenged subsections 15(A) and 16 of O.C.G.A. § 48-8-3, which exempt from taxation:

> (15)(A) ... any religious paper in this state when the paper is owned and operated by religious institutions or denominations and no part of the net profit from the operation of the institution or denomination inures to the benefit of any private person;
>
> ...
>
> (16) The sale or use of Holy Bibles, testaments, and similar books commonly recognized as being Holy Scripture regardless of by or to whom sold.

O.C.G.A. §§ 48-8-3(15)(A) & (16). Plaintiffs urged that the foregoing exemptions were impermissible under the Free Speech, Establishment, and Free Exercise Clauses of the First Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment, and various, correlative provisions of the Constitution of the State of Georgia. They sought injunctive and declaratory relief, as well as damages.

Contemporaneous with their pleading, Plaintiffs filed a motion for preliminary injunction and asked the Court, pursuant to Rule 65(a)(2), to consolidate the hearing on the preliminary injunction with the hearing on the final disposition of the case. (*See* Nov. 14, 2005 Pls.' Mot. for Prelim. Inj. and for Consolidation of the Prelim. Inj. and the Final Disposition [2].) More than three weeks thereafter, Defendant filed a motion to dismiss, as well as his opposition to Plaintiffs' request for a preliminary injunction. In the latter, he informed the Court:

> The Defendant does not object to the consolidation of the hearing on the preliminary injunction and the hearing on the final disposition of this matter. However, because the Plaintiffs are seeking to hold the Defendant personally liable for the damages that they seek, it is inappropriate for the Court to decide that issue on the basis of the "additional affidavits" suggested by the Plaintiffs without discovery.

(*See* Def.'s Resp. [6] at 4.) Plaintiffs thereafter dropped their claims for damages (*see* Notice [11] ), and submitted their opposition to Defendant's motion to dismiss. Defendant offered no reply.

This Court took up the matter in early February 2006, almost three months after Plaintiffs initiated suit. It began by concluding that, because the facts presented were "largely, if not entirely, undisputed[,]" and because the controversy before it focused predominantly on questions of law, a hearing would be neither necessary nor helpful. (*See* Feb. 6, 2006 Order [14] at 2 & 5 n. 2.) Turning to the merits of the case before it, the Court concluded that the tax exemptions, problematic under the Establishment Clause, were undoubtedly unconstitutional under the Free Speech Clause of the First Amendment. (*See id.* at 5-7.) It additionally rejected Defendant's arguments that Plaintiffs were without standing to prosecute this case, and that the Tax Injunction Act prohibited the Court's resolution of the matter. (*See id.* at 8-11.) Recognizing Plaintiffs' high like-

lihood of success on the merits, the Court likewise found that they had demonstrated the remaining preconditions necessary for the issuance of preliminary injunctive relief, and granted Plaintiffs' motion insofar as it sought the same. (*See id.* at 11–12.) Because Defendant's motion to dismiss did not raise any arguments that had not already been rejected, as a matter of law, in the course of the Court's preliminary injunction analysis, that motion was denied. (*See id.* at 13.)

Having found preliminary injunctive relief appropriate, the Court turned to consider whether consolidation of the preliminary injunction motion with a final determination on the merits was appropriate under Rule 65(a)(2). Recognizing that "consolidation is a preferable result where, as here, the dispute at issue is essentially legal in character and the material facts are undisputed" (*see id.* at 12), and noting Defendant's apparent acquiescence, the Court found consolidation appropriate, declared the tax exemptions unconstitutional, and enjoined their continued enforcement. (*See* Feb. 6, 2006 Order [14] at 12–14.)

Defendant has now filed a motion for reconsideration.[1]

### Discussion

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact."

*Bryan v. Murphy,* 246 F.Supp.2d 1256, 1258–59 (N.D.Ga.2003).

Conversely, motions for reconsideration may not be used as a vehicle to "repackage familiar arguments to test whether the court will change its mind." *Bryan,* 246 F.Supp.2d at 1259. Likewise, such motions "may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Adler v. Wallace Computer Servs., Inc.,* 202 F.R.D. 666, 675 (N.D.Ga.2001).

In view of that standard, the majority of Defendant's contentions warrant little consideration. This Court is not inclined to reevaluate its conclusion that Plaintiffs have standing to pursue this action, or that the challenged provisions of the Georgia Code are facially unconstitutional. Nor it is persuaded to hold, as Defendant suggests, that the Supreme Court's decision in *Hibbs v. Winn,* 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004), "was wrongly decided." (*See* Mot. to Reconsider [15] at 12.) That said, the Court finds that two of Defendant's arguments deserve further consideration.

### A. The Absence of a Hearing

Defendant contends that this Court erred in not holding a hearing before issuing a preliminary injunction, or before consolidating its preliminary injunction inquiry with a final determination on the merits. The Court addresses each argument separately.

---

1. Also pending before the Court is Plaintiffs' Preliminary Motion for Attorneys Fees and Expenses [17]. Consistent with its March 10, 2006 Order, the Court acknowledges that disposition of this motion would be premature. (*See* Mar. 10, 2006 Order [21].) Rather,

Plaintiffs will be permitted to file their Motion for Fees and Bill of Costs after the issuance of a final judgment, in accordance with the Local Rules of this Court. Plaintiffs' Preliminary Motion for Attorneys Fees and Expenses [17] is **DENIED with leave to re-file.**

1. *The absence of a hearing prior to the issuance of preliminary injunctive relief.*

■ As the Eleventh Circuit recently reiterated, "[a]n evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." *Cumulus Media, Inc. v. Clear Channel Commc'ns*, 304 F.3d 1167, 1178 (11th Cir.2002) (internal quotations omitted); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310–14 (11th Cir.1998) (district court did not err in issuing preliminary injunction without a hearing where material facts were not in dispute and defendant was provided with requisite notice of plaintiff's request for injunctive relief). It was this standard that the Court applied in its February 2006 Order (*see* Feb. 6, 2006 Order [14] at 5 n. 2), and, finding no material facts in dispute, the Court concluded that a hearing would be an inefficient mechanism to resolve this controversy.

Defendant now takes issue with this conclusion, enumerating eight facts that he would have brought to the Court's attention, "had [he] been given an opportunity to respond[.]" (*See* Mot. to Reconsider [15] at 6.) [2] The problems with Defendant's argument are several.

First, Defendant was never denied an "opportunity" to present these contentions. He was provided with ample notice of Plaintiffs' demand for preliminary injunctive relief. *See McDonald's Corp.*, 147 F.3d at 1311 ("[T]he purpose of Rule 65's notice requirement is to provide the party opposing the preliminary injunction with a 'fair opportunity to oppose the application and to prepare for such opposition.' [Cit.] So long as these goals are met, Rule 65 does not require an evidentiary hearing.") (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 432 n. 7, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)). Over three months elapsed between Plaintiffs' initiation of this suit and the Court's resolution of the motion, and Defendant had more than adequate time (and numerous opportunities) to raise these matters with the Court (including, *e.g.*, in a reply in support of his motion to dismiss, which he never filed).

**2.** These "facts" are as follows:

(1) Ms. Apple's allegation that the exemptions require her to treat her customers differently depending upon the content of their purchase was specious because she charged sales taxes on all purchases made at her bookstore; (2) on its sales tax returns the Phoenix and Dragon Bookstore did not claim any exemptions under O.C.G.A. § 48–8–3(15)(A) or § 48–8–3(16); (3) on December 9, 2005, an employee of the Georgia Department of Revenue purchased the *Holy Bible (Ancient Eastern Text)*, the *Bhagavad-Gita* and the *Essential Koran* at Ms. Apple's bookstore and was charged sales taxes on all three purchases; (4) Defendant does not prosecute taxpayers who over-collect sales taxes; the Department of Revenue treats the over-collection of sales taxes as civil matter and issues tax refunds, where appropriate; (5) the ACLU has filed a declaratory judgment action in another jurisdiction alleging that the term "Holy Scriptures" (which is also found in O.C.G.A. § 48–8–3(16)) includes not just the Christian Bible, but other religious texts, including but not limited to the *Quran*, the *Old Testament* and the *Bhagavad-Gita;* (6) before the Court issued its Order all core sacred texts were exempt from sales tax under O.C.G.A. § 48–8–3(16); (7) an internet search on www.wikipedia.com reveals that the *Bhagavad-Gita* is "revered as a sacred text of Hindu philosophy;" and (8) certain religious institutions purchase religious papers and give them out at no cost; under those circumstances any sales tax will fall on the religious institution; therefore, enjoining O.C.G.A. § 48–8–3(15)(A) could have the effect of inhibiting or curtailing the ability of religious institutions to proselytize their religious beliefs.

(*See* Mot. to Reconsider [15] at 6–7.)

That he neglected to do so is not a failing that can be remedied on a motion to reconsider. *See Mays v. United States Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) ("[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

Second, the Court's review of Defendant's papers filed prior to its February 6, 2006 Order reveals no suggestion that a genuine dispute existed *vis-a-vis* the "raw facts" at issue in this controversy. *Cumulus Media, Inc.*, 304 F.3d at 1178. The Court does not read Eleventh Circuit precedent to require a trial court to hold an evidentiary hearing whenever facts *might* be in dispute. The determination of whether the germane facts are "bitterly contested" is not, as this Court understands it, an exercise in the conceivable, but an assessment made on the papers and arguments in the record. *Id.*; *see McDonald's Corp.*, 147 F.3d at 1313 ("[T]he [defendants'] *filing* created no material issues of fact relating to the propriety of entering the injunction and was therefore insufficient to warrant an evidentiary hearing." (emphasis supplied)). If the rule were otherwise, evidentiary hearings would invariably be required by all but the most unimaginative of courts.

Finally, however, and most fundamentally, Defendant's argument fails because the facts he presents are not material. *See McDonald's Corp.*, 147 F.3d at 1313 (hearing not required where "material facts are not in dispute, or the disputed facts are not material to the preliminary injunction sought"). Generously read, the allegations contained in the motion could, at best, cast some doubt over Plaintiff Apple's standing to pursue this litigation. Even assuming that doubt materialized to such a degree that Ms. Apple was ruled an improper Plaintiff, however, the outcome of this lawsuit would be precisely the same. Plaintiff Budlong's standing would remain untouched, and he alone could have prosecuted this matter to a successful conclusion. Defendant's arguments to the contrary lack merit.

### 2. *The absence of a hearing prior to Rule 65(a)(2) consolidation.*

 Defendant goes on to argue that, even if this Court were correct in dispensing with a hearing prior to the entry of a *preliminary* injunction, it was compelled to hold such a hearing as a prerequisite to Rule 65(a)(2) consolidation. He urges that the Court misconstrued the breadth of his acquiescence to such consolidation, in that, in his consent, he contemplated that the Court would hold a hearing on Plaintiffs' motion for injunctive relief.

The authorities addressing the propriety of consolidation without an evidentiary hearing are sparse. Some courts that have confronted the question strongly intimated that where, as here, the material facts are not in dispute, a trial court commits no error in ordering consolidation without such a hearing. *See United States v. Owens*, 54 F.3d 271, 277 (6th Cir.1995) ("Nonetheless, this Circuit has held that when there is no dispute of material fact alleged, then it may be appropriate for a court to decide a case without an evidentiary hearing."); *Lynch v. Leis*, No. 1:00–CV–274 SJD, 2002 WL 33001391, at *4 (S.D.Ohio Feb.19, 2002) ("However, when there is no dispute of material fact alleged, the Court may grant a permanent injunction without an evidentiary hearing."); *cf. United States v. McGee*, 714 F.2d 607, 613 (6th Cir.1983) ("Normally, an evidentiary hearing is required before an injunction may be granted. [Cit.] It has been held, however, that such a hearing is not necessary where no triable issues of fact are

involved."). Even more have suggested that, if such consolidation is error at all, it is not that of a reversible sort. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir.1995) ("[S]everal courts have held that a court need not conduct an evidentiary hearing before issuing a permanent injunction if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction such that a hearing would not have altered the result."); *Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir.1977), *aff'd* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (not reversible error for trial court to impose preliminary and permanent injunction without an evidentiary hearing because "[t]here was no factual dispute as to the ground on which the injunction was ordered[,]" and thus, no prejudice to the nonmovant).

Having said that, the Court is sensitive to Defendant's allegation that he did not in fact consent to consolidation without an evidentiary hearing, and that, absent such consent, he was not given sufficient notice of the Court's intention to so proceed. *See Commodity Futures Trading Comm'n v. Bd. of Trade*, 657 F.2d 124, 127 (7th Cir. 1981) ("Numerous appellate courts have upset judgments granting relief on the merits where it appeared that the failure to give adequate notice of consolidation may have deprived a party of the opportunity fully to present the case on the merits."); *see also* Def.'s Resp. [6] at 4 ("The Defendant does not object to the consolidation of the hearing on the preliminary injunction and the hearing on the final disposition of this matter."). *But see Socialist Workers Party*, 566 F.2d at 587 ("Appellants also argued that they did not receive sufficient notice that the court would be considering both a preliminary and a permanent injunction. We question the propriety of this argument in light of the fact that the plaintiffs' motion was entitled 'Motion for Preliminary and Permanent Injunction.' "). Reversible error or not, the Court is not inclined to deny Defendant any process that he may be due.

Accordingly, the Court hereby **VACATES** that portion of its February 6, 2006 Order [14] consolidating the Court's resolution of Plaintiffs' preliminary injunction motion with a trial on the merits. Counsel for the parties are **DIRECTED** to make themselves available for a status teleconference on Thursday, August 3, 2006 at 3:30 p.m. to discuss how best to proceed in light of this ruling.

### B. The Tax Injunction Act

■ Defendant has asked this Court to reconsider its holding that the Tax Injunction Act (the "TIA" or the "Act") does not eliminate its jurisdiction over this controversy. The Court stands by its earlier determination.

The Tax Injunction Act, as this Court explained in its February 6, 2006 Order, provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. In a 2004 decision, the majority of a divided Supreme Court held that the Act was not designed to "prevent 'federal-court interference with all aspects of state tax administration,' " *Hibbs*, 542 U.S. at 105, 124 S.Ct. 2276, but rather, impacted only those "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.* at 107, 124 S.Ct. 2276. It held that "[t]hird-party suits not seeking to stop the collection (or contest the validity) of a tax *imposed on plaintiffs* ..., were outside Congress' [s] purview." *Id.* at 104, 124 S.Ct. 2276 (emphasis in original). The Court found support for its

holding, both in the language and legislative history of the TIA, as well as in the federal courts' historical application of the Act. *See id.* at 108, 124 S.Ct. 2276 ("In other federal courts as well, § 1341 has been read to restrain state taxpayers from instituting federal actions to contest their liability for state taxes, but not to stop third parties from pursuing constitutional challenges to tax benefits in a federal forum.").

This Court relied on *Hibbs* in finding that the instant case was within its jurisdiction. Plaintiffs, it noted, were not seeking to disrupt the State's collection of any tax, but rather, asking the Court to enjoin the application of an exemption—relief that, if granted, would result in an enrichment of Georgia's tax coffers, not a depletion of their contents. (*See* Feb. 6, 2006 Order [14] at 8–10.)

Apart from his contention that *Hibbs v. Winn,* 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004), was wrongly decided, Defendant contends that the decision permits only *non*-taxpayers (that is, "third-parties") to bring suit challenging a tax benefit. He argues that, because Plaintiffs here pay sales taxes, they are not "third-parties," and thus, cannot avail themselves of *Hibbs. See Henderson v. Stalder,* 407 F.3d 351, 359 (5th Cir.2005) ("*Hibbs* opened the federal courthouse doors slightly notwithstanding the limits of the TIA, but it did so only where (1) a third party (not the taxpayer) files suit, and (2) the suit's success will enrich, not deplete, the government entity's coffers.") (cited by Defendant).

Defendant, in the view of this Court, appears to misread the breadth of the Supreme Court's holding in *Hibbs,* and, more practically, the nature of the "taxpayer" vs. "third-party" distinction. To be sure, the *Hibbs* majority did not endeavor to define those terms with precision in its opinion, and the metes and bounds of the

"third-party" concept are, perhaps, open to debate. That ambiguity notwithstanding, whatever the Supreme Court meant when it used the term, "third-party," Plaintiffs here surely qualify.

The Court finds the clearest and strongest support for this conclusion in the language of *Hibbs* itself. There, the majority remarked that "numerous federal-court decisions—including decisions of this Court reviewing lower federal-court judgments—have reached the merits of *third-party constitutional challenges* to tax benefits without mentioning the TIA." *Hibbs,* 542 U.S. at 110, 124 S.Ct. 2276 (emphasis supplied). In support of this observation, the Justices cited with approval, *inter alia,* the Fourth Circuit's 1990 decision in *Finlator v. Powers,* 902 F.2d 1158 (4th Cir. 1990), a case upon which this Court relied heavily in its February 6, 2006 Order. *Id.* at 110–11. In that case, the Fourth Circuit recognized that purchasers and sellers of non-exempt publications were entitled to mount a First Amendment challenge to a state law exempting "Holy Bibles" from the state sales tax. *Finlator,* 902 F.2d at 1159. To be clear, it was *that* lawsuit, initiated by persons identically situated to Plaintiffs here, that the Supreme Court characterized as a permissible "third-party constitutional challenge[ ]" outside of the TIA's preclusive effect. *Hibbs,* 542 U.S. at 110, 124 S.Ct. 2276. *Hibbs* leaves no room for a contrary determination on the facts of this case. The Court declines Defendant's invitation to hold otherwise.

### Conclusion

Defendant's Motion for Reconsideration [15] is **GRANTED in part and DENIED in part.** It is granted only insofar as this Court **VACATES** that portion of its February 6, 2006 Order [14] granting Plaintiffs' Rule 65(a)(2) consolidation. Counsel for the parties are **DIRECTED** to make themselves available for a status telecon-

ference on Thursday, August 3, 2006 at 3:30 p.m. to discuss how best to proceed in light of this ruling.

Plaintiffs' Preliminary Motion for Attorneys Fees and Expenses [17] is **DENIED with leave to re-file.**

**SO ORDERED** this 13th day of July, 2006.