In re: **SUBPOENAED GRAND JURY WITNESS.**

**Subpoenaed Witness, Appellant,**

v.

**United States of America, Appellee.**

**No. 98–3545.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1998.

Decided March 23, 1999.

**512**

Alexander M. Salerno, James Inendino (argued), Chicago, IL, for Appellant.

Scott D. Levine, Office of United States Attorney, Criminal Division, Stephen D. Anderson (argued), Department of Justice, Chicago Strike Force, Chicago, IL, for Appellee.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A federal grand jury sitting in Chicago issued a subpoena to an unnamed Illinois lawyer (we'll give him a fake name—Tom Hagen—in this opinion). The subpoena ordered Hagen to testify and produce documents and records identifying all "individuals, companies, corporations or any other entities (including, but not limited to, *All Games Amusement, OK Amusement,* *Universal Amusement, Nicholas J. 'Buddy' Ciotti, Rocco Circelli,* and *Robert Cechini* and their agents or representatives) who paid legal fees, including the amounts and dates of payments," to him in connection with his representation of 21 specifically named defendants in various state court gambling cases. Hagen received a similar directive for fees paid by certain third parties to persons other than the 21 named state court defendants.

At a closed hearing in the district court to quash the subpoena Hagen argued that "any testimony concerning payment of fees will provide the government with the 'last link' and will identify a client and subject him to prosecution for the very investigation for which the government intends to prosecute," and that "[a]s in the *Cherney* [*Matter of Grand Jury Proceeding (Cherney)*, 898 F.2d 565 (7th Cir.1990)] case, [his] testimony ... will give rise to an identification of an individual who has sought [Hagen's] legal advice and in disclosing these confidential communications and the fee arrangement structure, etc., [Hagen] will be compelled to testify against his own client as to attorney/client privileged communications." Hagen's "last link" comment referred to a theory embraced by two other circuit courts of appeals that could support withholding the requested information. *See In re Grand Jury Proceedings 88–9(MIA) Newton*, 899 F.2d 1039 (11th Cir.1990); *In re Grand Jury Proceedings (GJ 90–2)*, 946 F.2d 746 (11th Cir.1991); *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026 (5th Cir. 1982); *In re Grand Jury Proceedings (United States v. Jones)*, 517 F.2d 666 (5th Cir.1975). The district court concluded that the "last link" exception did not apply and that the subpoenaed material was not protected by the attorney-client privilege. Hagen appeals, and because he presents a legal question, we review the district court's conclusion *de novo*. *See United States v. Burdix–Dana*, 149 F.3d 741 (7th Cir.1998). We will focus our attention on the *Cherney* claim.

■■ We start with a few general observations, one of which is that, for better or for worse, grand juries have immense power. Among other things, they can insist upon the production of every person's testimony. *United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769–70, 35 L.Ed.2d 67 (1973). And while grand juries must respect common law privileges, including that of attorney-client, *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), a proper invocation of the privilege is limited to that which is necessary to achieve its purpose, which is to protect confidential disclosures made within the context of an attorney-client relationship. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

It has been said that the attorney-client relationship does not create a "cloak of protection draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *United States v. Goldfarb,* 328 F.2d 280, 281–82 (6th Cir.1964). And we have observed, as a general principle, that "information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and client." *Matter of Witnesses Before Special March 1980 Grand Jury,* 729 F.2d 489, 491 (7th Cir.1984).

■ But we backpedaled on this bright-line principle in *Cherney,* the case Hagen says is "directly on point" and compels reversal of the district court's ruling. In that case, Attorney David Cherney represented a chap named Hrvatin in a drug conspiracy trial. Hrvatin's legal fees were paid by an unknown person who was also, apparently, involved in the same conspiracy. That person, the government conceded, consulted Cherney for legal advice regarding the same conspiracy. Following Hrvatin's conviction, Cherney was served with a subpoena directing him to identify the person who paid Hrvatin's bill. Cher-

ney's motion to quash the subpoena was granted by the district court, and we affirmed that decision on appeal.

Hagen argues that his situation is "strikingly similar" to that of the attorney in *Cherney.* In his case, Hagen represented 21 defendants (and perhaps others) in state gambling cases involving the use of video machines and other electronic devices. Hagen asserts that the 21 listed persons, all previously charged and tried in state gambling cases, are likely to be indicted or named as unindicted coconspirators arising out of the current federal grand jury proceeding to which he has been subpoenaed. The government has also set its sights on the third-party payor (or payors) of Hagen's bills, and Hagen says his testimony—linking the third-party fee payor(s) to the gamblers—will give the government the ammunition it needs to secure an indictment.

So our issue boils down to a simple proposition, i.e., whether Hagen can avoid the subpoena under the cover of *Cherney.* The answer to that simple question is, unfortunately, a bit elusive. Addressing a similar issue in *Vingelli v. United States,* 992 F.2d 449 (1993), the Second Circuit wrote:

Recognizing that client identity and fee information are not presently sheltered under the privilege, defense counsel urges that the information sought falls into one of the special exceptions to that rule. What those "special circumstances" are that would protect this information has not been precisely defined. What they are remains as enigmatic as the smile that Leonardo Da Vinci left us on the face of the Mona Lisa.

992 F.2d at 450. We agree. While a bright-line rule would be easy to understand and enforce, *Cherney* requires that we read the nuance in Mona Lisa's smile. *Cherney* protects from disclosure certain, and limited, client identity and third-party fee payor information.

■ So, does Hagen's situation, as described in his four-page affidavit, sealed and a part of the record on this appeal, move him into one of the "special exceptions" that allows him to pass on the government's request for disclosure? We have examined the affidavit and, reviewing it *de novo* which we are required to do, we believe Hagen slides through the crack left open by *Cherney*. We think it is clear, based on Hagen's affidavit, that he would be forced to violate the attorney-client privilege if he were made to say who paid the fees in question. We will not go into detail as to why we make this finding—that would be showing the hand to the government—but we are sure that disclosure of this information would identify a client of Hagen's who is potentially involved in targeted criminal activity which, on this record, would lead to revealing that client's motive to pay the legal bills for some of Hagen's other clients. And motive, we think, is protected by the attorney-client privilege. For as we observed in *Cherney*, "A client's motive for seeking legal advice is undeniably a confidential communication. Accordingly, the privilege protects an unknown client's identity where its disclosure would reveal a client's motive for seeking legal advice." 898 F.2d at 568. This case, as Hagen suggests, is in fact on all fours with *Cherney*, and the government can only prevail if we are prepared to walk away from that opinion. And that's a trip we decline to take. This conclusion also makes it unnecessary for us to consider Hagen's alternative argument regarding the "last link" exception. With that, the order denying the motion to quash the subpoena is REVERSED. The subpoena is quashed.