**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4779**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

LOUIS MARTIN,

              Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, District Judge.  (8:13-cr-00273-RWT-1)

Argued:  May 12, 2016          Decided:  September 16, 2016

Before TRAXLER and WYNN, Circuit Judges, and Norman K. MOON, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** William A. Mitchell, Jr., BRENNAN MCKENNA MANZI SHAY LEVAN CHARTERED, Greenbelt, Maryland, for Appellant.  Leah Bressack, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Louis Martin was convicted by a jury of one count of unlawful possession of a firearm by a felon, see 18 U.S.C. § 922(g)(1), and was sentenced to 210 months' imprisonment. Martin appeals, raising various challenges to his conviction and sentence. We vacate his conviction and sentence and remand for a new trial.

I.

In 2013, the FBI obtained an order authorizing the interception of the telephone communications of Russell Battle. Some of the monitored calls were between Battle and Martin, and those calls ultimately led the FBI to obtain an order authorizing the FBI to monitor Martin's calls as well.

Based on the monitored conversations, the FBI believed that Martin was planning a robbery of an armored car. The FBI also heard Martin first seeking Battle's help in obtaining a gun and later telling Battle that he had "stumbled up on something" and no longer needed Battle's help. J.A. 383, 897. Based on the information in the intercepted conversations, the FBI obtained a search warrant for Martin's home. Law enforcement officers executed the warrant early in the morning of April 24, 2013.

During the execution of the search, Martin admitted to FBI agents that he had been trying to buy a gun from Battle and telling others that he was planning a robbery. While the search

2

was ongoing, the officers permitted Martin to get dressed and go to his job. Sometime after Martin left, officers searching one of the closets in the master bedroom found a .40 caliber pistol tucked inside a stack of folded pants. The closet where the gun was found contained only men's clothes; the clothes belonging to Martin's wife were in a different closet.

Martin was subsequently arrested and charged with unlawful possession of a firearm by a felon. At trial, the government played recordings of many of the monitored telephone conversations, including the conversation where Martin told Battle that he had "stumbled up on something" and no longer needed Battle's help. Battle also testified for the government, effectively serving as a translator of the frequently coded conversations.

Martin's defense was that the gun belonged to his wife and that he had no knowledge of it until his wife called him while the search was ongoing and told him that the officers had found her gun. Martin's wife testified that she bought the gun for protection in 2011, when Martin was incarcerated, and that she had not told Martin about the gun. She explained that she hid the gun in Martin's closet rather than hers because she slept on the left side of the bed, and his closet was easier to reach from that position. Mrs. Martin's testimony about the gun was supported by the testimony of a friend who was with her when she

3

first tried (unsuccessfully) to buy a gun and by the testimony of another friend who was with Mrs. Martin when she later bought the gun on the street from an acquaintance.

Martin also testified at trial, and he insisted that he did not know about the gun before it was found in his closet. Martin acknowledged asking Battle to get a gun for him, but he contended that the gun was for someone else. Martin explained that he used the "stumbled up on something" phrasing when talking to Battle because he never told Battle that the gun was for someone else and he needed to maintain the fiction that he had been seeking the gun for himself.

The government argued to the jury that the gun found in the closet was in fact the gun bought by Mrs. Martin. The government contended that Martin told Battle that he had stumbled on something because Martin had found the gun and thus taken knowing possession of it. See Rebuttal Closing Argument, Trial Transcript pp. 1006-008.

The jury rejected Martin's defense and found him guilty. Martin thereafter filed a motion seeking a new trial. In the motion, Martin re-argued evidentiary issues that had been raised at trial and also alleged that a court employee exerted undue influence over a juror during deliberations. After conducting a hearing, the district court denied the motion in an oral ruling

4

from the bench. At a subsequent sentencing hearing, the district court sentenced Martin to 210 months' imprisonment.

## II.

Over Martin's objection, the district court permitted the government to introduce in its case-in-chief evidence of three prior convictions under Rule 404(b) of the Federal Rules of Evidence.[1] Martin argues on appeal that the evidence of his prior convictions was not admissible under Rule 404(b) because it was not relevant or necessary to prove the charged offense. Martin also argues that, in any event, the evidence should have been excluded as unfairly prejudicial. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011) ("[T]he probative value of [Rule 404(b)] evidence must not be substantially outweighed by its prejudicial effect, which

---

[1] Two of the convictions were for armed bank robberies occurring in 1997 and 1998. The third was a 2006 conviction for unlawful possession of a firearm, a charge that arose after Martin crashed his car into a light pole and was seen throwing a gun into bushes while walking away from the scene.

involves a Rule 403 determination." (internal quotation marks omitted)). We find no reversible error.

"Rule 404 generally prohibits evidence of other crimes or bad acts to prove the defendant's character and conduct in accordance with his character." United States v. McLaurin, 764 F.3d 372, 380 (4th Cir. 2014), cert. denied, 135 S. Ct. 1842 (2015), and cert. denied sub nom. Lowery v. United States, 135 S. Ct. 1843 (2015). "Such evidence, however, may be admissible 'for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident.'" Id. (quoting Fed. R. Evid. 404(b)). To be admissible under Rule 404(b), the evidence of prior bad acts "(i) must be relevant to an issue other than character, such as identity or motive; (ii) must be necessary to prove an element of the crime charged or to prove context; and (iii) must be reliable." Byers, 649 F.3d at 206 (citations, internal quotation marks and alteration omitted).

The district court admitted the prior convictions as evidence of Martin's knowledge and intent to possess the gun. After reviewing the record, we cannot say that the district court's decision was "arbitrary or irrational." United States v. Faulls, 821 F.3d 502, 508 (4th Cir. 2016) ("We review evidentiary rulings for abuse of discretion, and will not reverse a district court's decision to admit prior acts evidence

6

unless it was arbitrary or irrational." (citation and internal quotation marks omitted)).

Martin's not-guilty plea and the defense he presented at trial put at issue his knowledge of the gun and intent to possess it. See United States v. Sanchez, 118 F.3d 192, 196 (4th Cir. 1997) ("A not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent."). The prior convictions bear sufficient similarity to the present case to make evidence of the prior convictions relevant to Martin's knowledge and intent.[2] See United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997) ("[I]n order for repeated actions to have probative value, the earlier actions must be similar in nature to the charged

---

[2] While the prior convictions are not recent, the convictions nonetheless remain relevant since Martin was incarcerated for much of the time between those convictions and the events giving rise to this charge. See United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997) (finding nine-year-old bad-act evidence relevant despite lapse of time "particularly when the defendant has spent many of those intervening nine years in prison"); accord United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015) ("[B]ecause Williams was incarcerated for such a significant amount of time—approximately 12 of the 18 years since his 1995 conviction—the total number of years separating the prior offenses and the charged offense did not significantly diminish the probativeness of the evidence." (internal quotation marks and alteration omitted)), cert. denied, 136 S. Ct. 1450 (2016).

7

acts.").[3] Given the dearth of other evidence showing Martin's state of mind, the evidence of the prior convictions was likewise necessary. See id. at 998 ("Evidence is necessary where, considered in the light of other evidence available to the government, it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." (citation and internal quotation marks omitted)). Finally, the evidence was reliable, as it consisted of certified court records and statements of fact agreed to by Martin at the time of those convictions.

Accordingly, we see no error in the district court's decision to admit evidence of Martin's prior convictions under Rule 404(b). See United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent, and Walker's prior conviction for armed robbery addresses the material issue of his knowledge of the presence of the firearm

---

[3] For purposes of Rule 404(b), the necessary "similarity may be demonstrated through physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses." Queen, 132 F.3d at 996. Given the evidence connecting Martin's efforts to obtain a gun to his stated plans to rob an armored truck, Martin's prior armed bank robberies bear factual similarities to this case. Moreover, all of the prior convictions share state-of-mind similarities to the present case, as all involve the knowing possession or use of a firearm.

and his intent to possess it."); accord United States v. Moran, 503 F.3d 1135, 1144 (10th Cir. 2007); United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003); United States v. Cassell, 292 F.3d 788, 794-95 (D.C. Cir. 2002).

We likewise reject Martin's claim that the probative value of the prior convictions was substantially outweighed by the unfair prejudice of the details of the underlying crimes that were read to the jury by the government.

The government's pre-trial motion seeking admission of the prior convictions did not address the manner in which the government intended to prove the convictions, and Martin did not object when the government read the facts of the crimes to the jury. Accordingly, we review this claim for plain error only. See United States v. Williams, 81 F.3d 1321, 1325 (4th Cir. 1996) ("[M]otions in limine may serve to preserve issues that they raise without any need for renewed objections at trial, just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." (emphasis added)); id. (reviewing for plain error where "motion in limine was not based upon nor did it seek a ruling on the precise issue [the defendant] now seeks to raise" (emphasis added)).

"To obtain relief under plain-error review, [the defendant] must first establish that the district court erred, that the error was plain, and that it affected his substantial rights."

9

McLaurin, 764 F.3d at 388 (internal quotation marks omitted)). "Even when this burden is met, we have discretion whether to recognize the error, and should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

While Martin contends that the government gave the jury "in-depth descriptions" of the underlying convictions, Brief of Appellant at 23, the government's presentation of each conviction was brief, with concise descriptions of the facts presented in neutral, non-inflammatory language. Moreover, the facts of the underlying crimes were not significantly more violent than the armored-car robbery the jury heard Martin plan. Under these circumstances, Martin has failed to show plain error in the government's manner of proving the prior convictions. See United States v. Van Metre, 150 F.3d 339, 349, 350-51 (4th Cir. 1998) (in case where defendant was charged with kidnapping, concluding that defendant's prior convictions for kidnapping and rape were admissible under Rule 404(b) and finding no Rule 403 error in proving the prior convictions through the testimony of the victim "detailing her kidnapping and sexual assault").

III.

We turn now to Martin's challenge to the district court's exclusion of a telephone conversation between Martin and James Laidler.

A.

The Martin-Battle "stumbled up on something" conversation played for the jury by the government was a call-waiting call that interrupted a conversation between Martin and Laidler; Martin put Laidler on hold, talked to Battle, and then returned to his conversation with Laidler. In the first part of the Martin-Laidler conversation, Laidler told Martin that he had "straightened out" an unidentified situation. J.A. 923. Martin then switched over to Battle's incoming call and told Battle he had "stumbled up on something," J.A. 923, which Battle understood to mean Martin no longer needed a gun. When Martin returned to his conversation with Laidler, he explained that the other call was from the "dude right there," the "dude that was doing a favor for me." J.A. 924. After Martin told Laidler that he told the "dude" (i.e., Battle) that Martin was "all right," Laidler responded, "Yeah, that's right cause I don't need it now. . . ." J.A. 924.

At trial, Martin repeatedly sought to introduce the Martin-Laidler conversations that bracketed his "stumbled up on something" conversation with Battle. Martin argued that the

11

Laidler conversations were necessary to put the Battle conversation used by the government in context and to support his claim that he was never looking for a gun for himself. The district court excluded the before-and-after conversations with Laidler as hearsay.

B.

On appeal, Martin contends the district court erred by excluding evidence of the Laidler conversations. According to Martin, the statements made in the Laidler conversations are not hearsay because they were not offered for the truth of the matters asserted in the conversation. See Fed. R. Evid. 801(c)(2) (2012).[4] Martin contends the improper exclusion of the evidence requires a new trial because the Laidler conversations undercut the central premise of the government's case -- that Martin told Battle he had stumbled on something because Martin found his wife's gun hidden in the closet. We agree.

Hearsay is defined as an out-of-court statement that is offered "to prove the truth of the matter asserted in the statement." Id. Statements that are offered to prove the effect of the statement on the listener are not offered for

---

[4] Rule 801 was amended effective December 1, 2014. Because Martin's trial took place before the effective date of the amendments, we apply the version of the rule in effect at the time of trial.

12

their truth and therefore do not fall within the definition of hearsay. See United States v. Jenkins, 579 F.2d 840, 842 (4th Cir. 1978). In this case, the Laidler conversations were not being offered for the truth of the matter asserted in the conversation -- in essence, that Laidler no longer needed the gun that Martin was asking Battle to obtain.[5] Instead, the conversations were offered to show the effect of Laidler's statements on Martin: Immediately upon learning that Laidler no longer needed a gun, Martin told Battle that he no longer needed a gun -- that he had "stumbled up on something." Whether or not Laidler actually needed a gun is irrelevant; after the conversations with Laidler, Martin believed that Laidler no longer needed a gun, which explains why Martin told Battle that

---

[5] Counsel for Martin made oral proffers of the substance of the Laidler conversations at trial, and submitted a transcript of the conversation as an exhibit in connection with his motion for a new trial. See J.A. 923-24.

Like the conversations between Martin and Battle, the conversations between Laidler and Martin use guarded, cryptic language, and the word "gun" never appears. Nonetheless, when Laidler said, "that's right cause I don't need it now," J.A. 924, it was in response to Martin's explicit reference to the "stumbled up on something" conversation he had just had with Battle. Thus, when the Laidler conversations are considered together with the Battle conversation, the Laidler conversations can reasonably be understood as establishing that Laidler had previously asked Martin to get a gun for him, that Martin turned to Battle to get the gun for Laidler, and that Martin told Battle he no longer needed a gun as soon as Martin learned that Laidler no longer needed a gun.

13

he no longer needed a gun.  The Laidler conversations were therefore being offered to prove their effect on Martin -- to explain his motive in setting Battle on, and later calling him off of, the gun quest.  See United States v. Leake, 642 F.2d 715, 720 (4th Cir. 1981) (statement to defendant about use of returned funds was not hearsay because it was not offered to prove that the money was, in fact, used as described to defendant; its purpose was to show that the defendant believed that the funds were being used legitimately); Jenkins, 579 F.2d at 842 ("Insofar as elements of the taped conversations not directly expressing Johnson's intent were offered to prove that intent, they were not hearsay, for the import of them was their effect on her and not their truth." (emphasis omitted)); see also United States v. Leonard-Allen, 739 F.3d 948, 954 (7th Cir. 2013) ("A witness's statement is not hearsay if the witness is reporting what he heard someone else tell him for the purpose of explaining what the witness was thinking at the time or what motivated him to do something.  In those circumstances, the out-of-court statement is not being offered as evidence that its contents are true.").

14

Because the Laidler conversations were not offered for the truth of the matters asserted in the conversations,[6] we agree with Martin that the district court erred by excluding evidence of the conversations as hearsay.

C.

Having concluded that the district court erred by excluding evidence of the Laidler conversations, we must determine whether this error requires reversal.

Preliminarily, we reject the government's claim that Martin failed to preserve the not-hearsay issue he raises on appeal. Counsel for Martin premised his arguments for admission of the Laidler conversations on many grounds; while his focus may have been elsewhere, counsel nonetheless sufficiently raised at trial the not-hearsay argument now raised on appeal. See J.A. 752 ("Your Honor, it explains why it is that Mr. Martin made the

_____

[6] This analysis applies to both sides of the Laidler conversations -- the statements made by Martin were offered not for their truth, but to show their effect on Laidler, just as the statements made by Laidler were offered to show their effect on Martin. In any event, as Laidler's statements in the conversations are clearly admissible, Martin's side of the conversations would nonetheless be admissible to provide the context for Laidler's statements to Martin and Martin's statements to Battle. See United States v. Leake, 642 F.2d 715, 720 n.6 (4th Cir. 1981) ("Leake's [admissible, non-hearsay] testimony regarding his conversation with Graham would be meaningless unless both sides of the conversation were recounted to the jury. Graham's statements to Leake were admissible, therefore, as necessary to explain the context in which Leake made the statements revealing his state of mind.").

15

request of Mr. Battle which is what we have been talking about this entire time. . . .").  Because the issue was raised below, it is preserved for appeal and subject to harmless-error, not plain-error, review.  See United States v. Ellyson, 326 F.3d 522, 530–31 (4th Cir. 2003) (issues preserved below are reviewed for harmless error on appeal); United States v. Lowe, 65 F.3d 1137, 1144 (4th Cir. 1995) (applying plain-error review to argument asserting basis for admission that was not argued to district court).  And under harmless-error review, we believe that reversal is required.

To prove that the improper exclusion of the Laidler conversations was harmless, "the Government must demonstrate that the error did not have a substantial and injurious effect or influence in determining the jury's verdict."  United States v. Ibisevic, 675 F.3d 342, 349 (4th Cir. 2012) (internal quotation marks omitted).

> An appellate court does not inquire into whether absent the error sufficient evidence existed to convict, but rather whether we believe it highly probable that the error did not affect the judgment. Thus, [to find an error harmless,] we must be able to say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.

Id. at 350 (citation and internal quotation marks omitted). When undertaking the harmlessness calculus, we consider "(1) the centrality of the issue affected by the error; (2) the steps

16

taken to mitigate the effects of the error; and (3) the closeness of the case." Id. (internal quotation marks omitted).

Here, the error went to the central issue in the case. As noted above, the government argued to the jury that Martin found the gun that Martin's wife had hidden in the closet, which is why Martin told Battle that he had "stumbled up on something" and no longer needed a gun. The evidence excluded by the district court went directly to this issue, by providing an alternate explanation for Martin's seeking a gun from Battle -- he wanted it for Laidler, not himself -- and an alternate interpretation of the "stumbled up on something" comment -- Laidler no longer needed the gun, and Martin needed to maintain the fiction that he had been seeking the gun for himself. The exclusion of the Laidler conversations thus deprived Martin of the only evidence that could corroborate his testimony about why he initially sought a gun from Battle and why he stopped looking for one. See id. at 351 (centrality-of-issue factor weighed against finding improper exclusion of evidence harmless because "the excluded testimony was the only evidence that would have corroborated the defendant's own testimony of assertedly innocent conduct").

As to the steps taken to mitigate the effects of its evidentiary ruling, the district court did give Martin some leeway to inform the jury of the existence of the Laidler

17

conversations. For example, Martin testified that the gun he was seeking from Battle was not for him, see J.A. 758, and the district court permitted Martin to testify that he asked Battle for a gun "[a]s a result of [a] conversation I had with Mr. Laidler." J.A. 755. The district court also permitted Martin to explain to the jury that he was talking to Laidler immediately before the "stumbled up on something" conversation with Battle, and that "[a]s a result of the conversation that I was having, I told [Battle] that I didn't need it, that I stumbled up on something." J.A. 761. We disagree with the government, however, that this limited discussion of Martin's conversations with Laidler suffices to render the improper exclusion of the evidence harmless.

Evidence of the Laidler conversations would have corroborated Martin's claim that the gun he sought from Battle was not for him, and it would have explained to the jury why Martin would have told Battle he "stumbled up on something" if he had not found his wife's gun. The bare-bones information that Martin was able to present simply did not convey this critical information to the jury. The evidence heard by the jury thus was not an adequate substitute for the evidence that would have been heard by the jury had the Laidler conversations not been improperly excluded. Cf. United States v. Kohan, 806 F.2d 18, 22 (2d Cir. 1986) (remanding for new trial when

18

improperly excluded testimony "would have corroborated [defendant's] statements to law enforcement officials, thereby helping to diminish the effect of their self-serving nature").

The final factor relevant to our harmlessness inquiry is the closeness of the case. See Ibisevic, 675 F.3d at 350. We recognize that the government's evidence was relatively strong. The evidence included testimony about Martin apparently planning to rob an armored car, and Battle's testimony that Martin asked Battle to procure a gun for him but later told Battle that he did not need the gun. Moreover, the gun was found hidden in a stack of men's pants in Martin's closet, and the FBI agents involved in the search testified that Martin told them "that he knew that the gun was in his bedroom closet when the F.B.I. searched his house." J.A. 218; see also J.A. 458.

Martin, however, reasonably contested the government's evidence on the most important points. Martin and his wife testified that he had no knowledge of the gun until she called him during the search and told him that the gun had been found. Martin testified that he owed money to Battle and that he only talked about possible robberies in order to convince Battle that Martin would eventually be able to pay the debt. Martin also testified that the gun he sought from Battle was actually for someone else and that he used the "stumbled up on something" phrasing when telling Battle he no longer needed the gun because

19

Battle did not know that the gun was for someone else and Martin needed to maintain the fiction that he had been seeking the gun for himself.

Thus, even without the corroborating evidence of the Laidler conversations, the case was not one-sided. The government's evidence may have been sufficient to support Martin's convictions, but the question before us is "whether [the government's evidence] is sufficiently powerful in relation to the excluded testimony to ensure the error did not affect the outcome." Ibisevic, 675 F.3d at 354 (internal quotation marks omitted). As noted, the excluded evidence directly challenged the government's interpretation of the evidence central to its case -- Martin's statement to Battle that he had "stumbled up on something" and no longer needed a gun. The excluded testimony, therefore, had it been heard and credited by the jury, would have substantially weakened the government's case while simultaneously strengthening Martin's defense.

In sum, the excluded evidence went to the central issue in the case; the truncated evidence that Martin was permitted to introduce did not convey the same information that would have been conveyed by the excluded evidence; and the government's evidence of Martin's guilt was far from overwhelming. Under these circumstances, we cannot say with any degree of certainty that the district court's error in excluding evidence of the

Laidler conversations did not affect the judgment. Because the exclusion of the evidence was not harmless, we must therefore vacate Martin's conviction and remand for a new trial.[7]

## IV.

Martin also challenges his 210-month sentence. Although the statutory maximum sentence for a § 922(g) conviction is generally ten years, see 18 U.S.C. § 924(a)(2), the district court concluded that Martin qualified as an armed career criminal, which subjected Martin to a mandatory minimum sentence of at least fifteen years, see 18 U.S.C. § 924(e)(1).

As part of its conclusion that Martin qualified for sentencing under § 924(e), the district court held that a Maryland robbery conviction was a predicate conviction under the "residual clause" of § 924(e)(2)(B)(ii). The parties agree that, in light of the Supreme Court's invalidation of the residual clause in Johnson v. United States, 135 S. Ct. 2551, 2563 (2015), Martin no longer qualifies as an armed career

---

[7] In light of our conclusions that the Laidler conversations should have been admitted and that a new trial is required, we decline to consider Martin's argument that the district court should have permitted him to cross-examine one of the FBI agents about the Laidler conversations. Should the issue arise again in the new trial, the parties may address the issue anew and the district court is free to consider the issue de novo. Our conclusion that a new trial is required also makes it unnecessary to address Martin's claim that a court employee exerted undue influence over a juror.

criminal.    Should Martin be convicted again on remand, the district court must sentence Martin within the ten-year statutory range established by § 924(a)(2).

V.

Accordingly, for the foregoing reasons, we hereby vacate Martin's conviction and sentence and remand for a new trial consistent with this opinion.

<u>VACATED AND REMANDED</u>