**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 18, 2017[*]
Decided October 12, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1223

| | |
|---|---|
| TERRANCE J. SHAW, | Appeal from the |
|     *Plaintiff-Appellant*, | United States District Court for the |
| | Western District of Wisconsin. |
|     *v*. | |
| | No. 15-cv-511-wmc |
| JON E. LITSCHER, et al., | |
|     *Defendants-Appellees*. | William M. Conley, |
| | *Judge*. |

## O R D E R

Terrance Shaw, a Wisconsin prisoner, sued prison officials under 42 U.S.C. § 1983 alleging that they violated his rights under the First Amendment by retaliating against him for filing a lawsuit. He complains of three retaliatory acts: prison officials ordered him to discard some legal papers; transferred him to another prison; and tampered with his outgoing mail. The district judge entered summary judgment for the defendants. We affirm the judgment. A reasonable fact finder could not conclude that the defendants

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

had a retaliatory motive or that their actions would deter an ordinary person from exercising his First Amendment rights.

We review a summary judgment de novo and recount the facts in the light most favorable to Shaw, the nonmoving party. *See Chaib v. GEO Grp., Inc.*, 819 F.3d 337, 340 (7th Cir. 2016). In 2012 Shaw sued staff at Oshkosh Correctional Institution for disability discrimination. *See Shaw v. Wall*, No. 12-cv-497-wmc, 2014 WL 4926185 (W.D. Wis. Sept. 30, 2014). Two years later, while that suit was ongoing, Shaw's cellmate complained that Shaw had too much personal property—including legal documents—in their cell. In response prison staff and Shaw's social worker met with Shaw and ordered him to comply with Oshkosh's property policy, which requires inmates to dispose of excess property or request temporary storage. Shaw disposed of his excess property, including 36,000 pages of legal documents.

In July 2015 the prison's program review committee met to consider Shaw's custody classification and institutional placement. Before the meeting the committee received a report from Shaw's social worker, who recommended a transfer. The social worker was aware of Shaw's disability suit, having learned of it about seven months earlier. Shaw told the committee that he thought the transfer recommendation was linked to his lawsuit. The committee accepted the social worker's recommendation. Shaw was eventually transferred to a different prison.

The disability suit was settled later in 2015. Shaw attempted to mail a copy of the settlement agreement to an inmate at another prison. He placed a copy of the document in an envelope and deposited it in the prison's mailbox. Sergeant Keith Cook inspected the envelope and saw that it contained the settlement agreement. Cook thought that prison rules prohibited inmates from exchanging legal mail with inmates at different institutions. But when Shaw showed Cook that the rules permit the exchange, Cook acknowledged that he was mistaken. Cook swears that he sealed the envelope with the settlement agreement inside and placed it with other outgoing mail. But when the envelope reached the other inmate, the document was missing.

Shaw sued Cook and other prison officials who were involved in these three incidents. He claims that the defendants retaliated against him for filing the disability-discrimination lawsuit, thus violating his rights under the First Amendment. The district judge entered summary judgment for the defendants, explaining that the evidence did not support an inference that the defendants were motivated to retaliate against Shaw when they ordered him to destroy his excess property and recommended a transfer. As for the mailroom encounter, the judge explained that there was no evidence

that Sergeant Cook had removed the copy of the settlement agreement from Shaw's envelope. Even if he had, the judge added, that alone was too inconsequential to deter an ordinary prisoner from exercising his speech rights.

On appeal Shaw contends that he presented enough evidence to survive summary judgment. Shaw can prevail only if a reasonable fact finder could conclude from this record that the defendants intended to deter protected speech. *See Herron v. Meyer*, 820 F.3d 860, 863 (7th Cir. 2016); *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009); *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005). We accept for present purposes that Shaw's disability lawsuit was protected speech.

Shaw argues first that the district judge should have excluded the evidence that his cellmate had complained about excess property in their cell. One of the defendants had attested to this in an affidavit; Shaw objects to that statement as hearsay. The statement is not hearsay. It was not offered for the truth of the cellmate's assertion that Shaw had too much property in the cell. Rather, it was offered as evidence of the defendants' reason for investigating whether Shaw had too much property. *See Simpson v. Beaver Dam Cmty. Hosps.*, 780 F.3d 784, 796 (7th Cir. 2015); *United States v. Leonard–Allen*, 739 F.3d 948, 954 (7th Cir. 2013) ("A witness's statement is not hearsay if the witness is reporting what he heard someone else tell him for the purpose of explaining what the *witness* was thinking, at the time or what motivated him to do something."). And because this was the *only* evidence of why Shaw was ordered to remove legal papers from his cell, the judge rightly concluded that the record could not support a finding that the order was retaliatory.

Shaw next argues that his social worker's knowledge of his lawsuit was sufficient to show that her transfer recommendation was retaliatory. As we've explained in other retaliation cases, mere knowledge that someone has engaged in protected speech does not permit an inference that an adverse action occurred *because* of this knowledge. *See Healy v. City of Chicago*, 450 F.3d 732, 741 (7th Cir. 2006).

Shaw replies that the timing of the transfer recommendation is suspicious; the social worker made the recommendation about seven months after learning of his lawsuit. But we've held in other cases that a time lag of seven months is too long to permit a reasonable inference of retaliation. *See Feldman v. Olin Corp.*, 692 F.3d 748, 757 (7th Cir. 2012) (eight months between protected activity and adverse action insufficient); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (more than five weeks between protected activity and adverse action insufficient); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) (same for four-month interval).

Finally, Shaw argues that the judge overlooked a factual dispute about whether Sergeant Cook tampered with his outgoing mail. But even if we assume that Cook interfered with Shaw's mail, and assume further that he did so to punish Shaw for his disability suit, Shaw could not win on a retaliation claim at trial. To prevail Shaw must show that the interference was serious enough to deter an ordinary prisoner from exercising his speech rights. *See Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016); *Herron*, 820 F.3d at 863–64; *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). It wasn't. This single, minor instance of mail tampering, if it occurred, was not enough to deter an ordinary prisoner from exercising his First Amendment rights.

We have considered Shaw's other contentions, but none merits discussion. The district court's judgment is **AFFIRMED**.